Case No. 24-13284-D

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

EMILY LAUGHLIN,

Appellant

v.

MIAMI-DADE COUNTY,

Appellee

_____

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

## Case No. 23-CV-23350-KMM

_____

## APPELLEE'S ANSWER BRIEF

_____

GERALDINE BONZON-KEENAN
Miami-Dade County Attorney
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
(305) 375-5151

/s/ *Andrea Sofia de Oña*
Assistant County Attorney
Attorney for Appellee

CASE NO. 24-13284-D
Laughlin v. Miami-Dade County

**Certificate of Interested Persons and**
**<u>Corporate Disclosure Statement</u>**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit

Rule 26.1-1, Appellee certifies that the CIP filed by Appellant on October 23,

2024 is correct and complete.  This appeal does not involve any corporate

parties.

*/s/  Andrea de Ona*
Andrea de Oña
Assistant County Attorney
Florida Bar No. 1019568
Counsel for Appellee

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

# STATEMENT REGARDING ORAL ARGUMENT

Appellee agrees with Appellant that oral argument is not necessary. This case involves the application of well-developed case law to the undisputed applicable facts. The facts and legal arguments are adequately presented in the briefs and the record, and the decisional process would not be significantly aided by oral argument.

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

# TABLE OF CONTENTS

<u>**Page**</u>

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT ....................................C1 of 1

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

TABLE OF CONTENTS...............................................................................ii

TABLE OF CITATIONS ..........................................................................iv

STATEMENT OF JURISDICTION........................................................ viii

STATEMENT OF THE ISSUE.....................................................................1

STATEMENT OF THE CASE.....................................................................2

    (i)     Course of Proceedings and Dispositions in the Court Below.........................2

    (ii)    Statement of Facts .............................................................2

    (iii)   Standard of Review .......................................................9

SUMMARY OF ARGUMENT ................................................................11

ARGUMENT ....................................................................................12

I.     The District Court Correctly Found that Laughlin Failed to Prove a Prima Face Case of Disability Discrimination Under Any Theory.................................12

II.    The District Court Correctly Found No Direct Evidence of Disability Discrimination ...................................................................12

       A. Ms. Jose's Statements Do Not Amount To Direct Evidence .................12

## TABLE OF CONTENTS (cont'd)

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

B. Ms. Jose Was Not the Decisionmaker ...................................................... 15

III. The District Court Properly Found That Plaintiff's Circumstantial Evidence Does Not Prove A Claim of Disability Discrimination Under the McDonnell-Douglas Standard ................................................................................................ 17

A. Laughlin Has Not Establish That She Suffered An Adverse Employment Action ........................................................................................ 17

B. Laughlin Has Not Established That She Was Disabled or Perceived as Disabled at the Time of Her Failed Probation .............................................. 17

C. Laughlin Has Not Establish that She Was Subjected to Unlawful Discrimination Because of Her Disability ....................................................... 23

D. The County Had Legitimate, Non-discriminatory Reasons for Laughlin's Failed Probation ........................................................................... 24

1. Laughlin's Poor Performance ................................................................. 24

IV. The District Court Correctly Concluded that Laughlin Failed to Prove Disability Discrimination Through Any Convincing Mosaic of Circumstantial Evidence ................................................................................................................ 28

V. The District Court's Order Should be Affirmed as the Legitimate, Non-discriminatory Reasons Asserted by the County Cannot Be Established As Pretextual…………………………………………………………………...30

VI. CONCLUSION ................................................................................................... 31

CERTIFICATE OF COMPLIANCE ..................................................................... 32

CERTIFICATE OF SERVICE ............................................................................... 32

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

# TABLE OF CITATIONS

**Cases**                                                                   **Page(s)**

*Akridge v. Alfa Ins. Companies*,
 93 F.4th 1181 (11th Cir. 2024) ........................................................................23

*Barneman v. Int'l Longshoreman Ass'n Loc.*,
 1423, 840 F. App'x 46–79 (11th Cir. 2021)........................................................17

*Bass v. Lockheed Martin C*orp.,
 287 F. App'x 80811 (11th Cir. 2008)..................................................................16

*Bragdon v. Abbott*,
 524 U.S. 62431 (1998).........................................................................................19

*Carruthers v. BSA Advert., Inc.*,
 357 F.3d 121–16 (11th Cir. 2004) ......................................................................18

*Cash v. Smith*,
 231 F.3d 1301 (11th Cir. 2000) ..........................................................................21

*Cox v. City of Tampa*,
 418 F. App'x 845 (11th Cir. 2011)......................................................................22

*Damon v. Fleming Supermarkets of Fla., Inc.*,
 196 F.3d 1354 (11th Cir. 1999) ................................................................. 12, 23

*Dowdell-McElhaney v. Glob. Payments Inc.*,
 No. 23-10334, 2024 WL 27969765 (11th Cir. May 31, 2024) ...........................14

*East v. Clayton Cnty, GA*,
 436 Fed. App'x 904, 912 (11th Cir. 2011)……………………………………31

*Hargray v. City of Hallandale,*
 57 F.3d 156567 (11th Cir. 1995) ........................................................................18

*Harrell v. City of Opa-Lo*cka,
 No. 20-21927-CIV, 2022 WL 898565, at16 (S.D. Fla. Mar. 28, 2022)..............14

*Harris v. Pub. Health Tr. of Miami-Dade Cn*ty.,
 82 F.4th 1296 (11th Cir. 2023) ..................................................... 14, 15, 16, 17

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

# TABLE OF CITATIONS (cont'd)

**Cases**                                                                      **Page(s)**

*Harrison v. Sheriff, Holmes Cnty. Fla.,*
No. 22-14288, 2024 WL 449374, a *4 (11th Cir. Feb. 6, 2024)..........................18

*Hawkshead v. Cnty. of Sarasota,*
738 F. Supp. 470 (M.D. Fla. 1990).........................................................................24

*Holton v. First Coast Serv. Options, Inc.,*
703 F. App'x 9171 (11th Cir. 2017).......................................................................19

*Howard v. Oregon Television, Inc.,*
276 F. App'x 940 (11th Cir. 2008)..........................................................................27

*Hudson v. Tyson Farms, Inc.,*
769 F. App'x 91115 (11th Cir. 2019)......................................................................19

*Isenbergh v. Knight-Ridder Newspaper Sales, Inc.,*
97 F.3d 436 (11th Cir. 1996) ..................................................................................27

*Jefferson v. Sewon Am., Inc.,*
891 F.3d 91122 (11th Cir. 2018) ............................................................................14

*Jones v. Bessemer Carraway Med. Ctr.,*
151 F.3d 1321 (11th Cir. 1998) ..............................................................................14

*Laughlin v. Miami-Dade Cnty., Fla.,*
No. 1:23-CV-23350-KMM, 2024 WL 4377983 (S.D. Fla. Sept. 9, 2024) ... 21, 22

*Lewis v. City of Union City,*
934 F.3d 1169 (11th Cir. 2019) ..............................................................................28

*Lewis v. City of Union City, Ga,*
918 F.3d 1213 (11th Cir. 2019) ..............................................................................12

*McKinley v. Kaplan,*
262 F.3d 1146 (11th Cir. 2001) ......................................................................... 10, 13

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

**Cases**                                                                                     **Page(s)**

*Merrit v. Dillard Paper Co.,*
   120 F.3d 1181 (11th Circuit 1997) ........................................................................13

*Munoz v. Selig Enterprises, Inc.,*
   981 F.3d 12652 (11th Cir. 2020) ................................................................. 20, 21

*Murphy v. United Parcel Serv., Inc.,*
   527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999) ....................................22

*Owens v. Governor's Off. of Student Achievement,*
   52 F.4th 1327 (11th Cir. 2022) ............................................................................24

*Patterson v. Ga. Pac., LLC,*
   38 F.4th 1336 (11th Cir. 2022) .................................................................. 26, 27

*Ramirez v. Miami-Dade Cnty.,*
   846 F. Supp. 2d 1308 (S.D. Fla. 2012) ...............................................................26

*Rollins v. TechSouth, Inc.,*
   833 F.2d 1525 .......................................................................................................13

*Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale,*
   46 F.4th 1268 (11th Cir. 2022) ............................................................................23

*Sicilia v. UPS,*
   219 F. App'x. 936 (11th Cir. 2008).......................................................................2

*Standard v. A.B.E.L. Servs., Inc.,*
   161 F.3d 131330 (11th Cir. 1998) ........................................................................17

*Todd v. Fayette Cnty. Sch. Dist.,*
   998 F.3d 1203 (11th Cir. 2021) .......................................................... 12, 13, 31

*United States v. Hall,*
   714 F.3d 1270 (11th Cir. 2013) ...........................................................................10

*Walker v. St. Joseph's/Candler Health Sys., Inc.,*
   506 F. App'x 886.1 (11th Cir. 2013)....................................................................15

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

# TABLE OF CITATIONS (cont'd)

**Statutes**                                                                    **Page(s)**

28 U.S.C. § 1291 ................................................................................ vi

42 U.S.C. §12132 .................................................................................2

42 U.S.C. § 3604(f) .............................................................................23

42 U.S.C. § 12102(2)(A) ......................................................................19

**Rules**

11th Cir. R. 32-4 ................................................................................32

Eleventh Circuit Rule 26.1-1 ...............................................................1

Fed. R. App. P. 32 (a)(7)(B) ...............................................................32

Fed. R. App. P. 32(a)(5) ......................................................................32

Fed. R. App. P. 32(f) ...........................................................................32

Fed. R,. App. P. 32(a)(6) .....................................................................32

Federal Rule of Appellate Procedure 26.1 ..........................................1

**Regulations**

29 C.F.R. § 1630.2(j)(1)(ii) ................................................................20

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

## STATEMENT OF JURISDICTION

This case is on appeal following the District Court's Order granting Miami-Dade County's Motion for Summary Judgment on September 9, 2024. This Court has jurisdiction under 28 U.S.C. § 1291.

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

## STATEMENT OF THE ISSUE

1. Whether the District Court properly granted summary judgment in favor of Appellee because plaintiff failed to provide direct evidence of discrimination, did not establish a *prima facie* case of disability discrimination, did not present a convincing mosaic of evidence to establish disability discrimination and failed to demonstrate that the legitimate reasons for failing probation were a pretext for unlawful discrimination?

2. Whether Appellant can establish that she suffered an adverse employment action?

## STATEMENT OF THE CASE

(i)     <u>Course of Proceedings and Dispositions in the Court Below</u>

On September 1, 2023, Emily Laughlin ("Laughlin") filed a five-count Complaint challenging her dismissal from Miami-Dade County ("the County") employment during her probationary period. Laughlin asserted the following claims against the County: (Count I) Family Medical Leave Act ("FMLA") Retaliation; (Count II) FMLA Interference; (Count III) violation of the American with Disabilities Act ("ADA") – discrimination – 42 U.S.C. §12132; (Count IV) violation of the Florida Civil Rights Act ("FCRA") – discrimination; and (Count V) violation of §504 of the Rehabilitation Act of 1973.[1] (D.E. 3).

On May 13, 2024, the County filed its Corrected Motion for Summary Judgment and Incorporated Memorandum of Law (D.E. 21) seeking final judgment on all claims asserted by Laughlin. In Response (D.E. 29), Laughlin conceded that the County was entitled to summary judgment as to the FMLA claims in Counts I and II.

**The District Court's Order**

On September 9, 2024, the district court issued an Order granting the County's Corrected Motion for Summary Judgment. (D.E. 44). On September

---

[1] Counts III - IV are analyzed under the same standards for disability discrimination claims. *Sicilia v. UPS*, 219 F. App'x. 936, 938 (11th Cir. 2008).

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

27, 2024, final judgment was entered in the County's favor. (D.E. 45).

The district court held that the statements Laughlin attributes to Ms. Annette Jose ("Ms. Jose") fail to rise to the level of direct evidence. (D.E. 44, p. 8). Additionally, the district court held that Laughlin's direct evidence argument fails because Ms. Jose was not the decision maker. (*Id*. at 9).

Beyond that, the district court held that Laughlin failed establish a *prima face* case of disability discrimination because: 1) Laughlin did not identify any "*major life activity*" in which she was substantially limited at the time of her failed probation, and (2) Laughlin did not provide any evidence indicating that she was "substantially limited" in any major life activity. (*Id.* at 11-13). Taken together, Laughlin failed to come forward with evidence establishing that she was disabled or perceived as disabled at the time her probation was failed. (D.E. 44, pp. 11-13).

The district court held that Laughlin failed to establish that she was subjected to unlawful discrimination because of her disability. (*Id.* at 13). After a careful review of the record, the Court found "only anecdotal evidence of instances in which [Laughlin] believes that she was not treated well by various coworkers and superiors, combined with the fact that Plaintiff was the only employee working from home." (*Id.* at 14).

Lastly, the district Court held that Laughlin failed to demonstrate that the

County's legitimate, non-discriminatory reasons for Laughlin's failed probation were a pretext for disability discrimination. (*Id.* at 15). Indeed, the Court found that the "record amply supports Defendant's account of Plaintiff's failed probation. It is also devoid of any evidence of discriminatory animus." (*Id.* at 16). Laughlin appealed from the order granting summary judgement and the corresponding final judgment.

(ii) <u>Statement of Facts</u>

On February 21, 2022, the County's Animal Service Department ("ASD") hired Emily Laughlin (formerly known as Emily McClure), as an ASD Outreach Specialist earning an annual salary of $46,758.92. (D.E. 20-1 at 32:4-14; D.E. 20-2 at 130-132). As an ASD Outreach Specialist, Laughlin was responsible for, among other things: planning, directing, coordinating, implementing, and supervising a variety of community-wide pet adoption and special events. (D.E. 20-2 at 133-134).

Upon hiring, Laughlin was required to successfully complete a twelve (12) month probation before attaining civil service status. (D.E. 20-4 at ¶¶ 5-6; D.E. 20-3 at 25:2-4).

**Laughlin Was Able To Perform Her Job Duties**

Throughout Laughlin's probation, Laughlin did not have any physical difficulty performing her duties and was able to physically perform all aspects of her job. (D.E. 20-1 at 79:7-11). On this point, Laughlin testified as follows:

| Q. (Ms. de Ona): | Were you having any difficulty performing? |
| A. (Ms. Laughlin): | Not that I saw within myself, no. |
| Q. (Ms. de Ona): | **Was there any part of your job you couldn't do?** |
| A. (Ms. Laughlin): | **No.** |

(*Id.*).

**Chain of Command**

From October 2022 to January 5, 2023, Laughlin reported to ASD Shelter Program Manager, Victoria Valledor ("Valledor"). (D.E. 20-5 at 11-14; *Id.* at 11-12). Human Resources Manager, Dailin Sanchez ("Ms. Sanchez") reported to Assistant Director of Administrative Services, Ms. Jose. (D.E. 20-7 at 7:4-5). As Assistant Director of Administrative Services, Ms. Jose oversaw the Human Resources Department. (D.E. 20-3 at 50:13-18). Ms. Jose reported to ASD Director, Alison Stanford ("Director Stanford"). (D.E. 20-3 at 12:17-18.).

**Laughlin is Offered a Leave of Absence and a Hybrid Schedule**

Laughlin met with Human Resources Manager, Ms. Sanchez, and stated that she would need time off to take attend doctor appointments to determine what was ailing her. (D.E. 20-7 at 2:18-3:22). Subsequently, Laughlin provided Ms. Sanchez with a note from Advanced Practice Registered Nurse Jessica Roldan dated October 5, 2022. (D.E. 20-8). The note merely stated that Laughlin had undefined "medical issues" and needs time off to complete testing. (*Id.*). The note recommended that Laughlin start a medical leave of absence from October 5, 2022, through November 5, 2022. (*Id.*). The only medical document that Ms. Sanchez or the ASD Human

Resources Department received from Laughlin was the October 5, 2022, undefined "medical issues" note from Advanced Practice Registered Nurse Jessica Roldan. (D.E. 20-4 at ¶ 7).

Ms. Sanchez informed Laughlin that she was not eligible for FMLA leave due to the fact that she had not been employed with the County for twelve months (one year). (D.E. 20-7 at 4:1-11; *Id.* at 7:6-11). As a result, Ms. Sanchez suggested the possibility of Laughlin working from home during part of the week, as well as taking an unpaid leave of absence. (D.E. 1 at ¶¶ 24-25; D.E. 20-1 at 53:9-54:4). Laughlin declined the option of taking an unpaid leave of absence. (D.E. 1 at ¶ 24; D.E. 20-7 at 7:19-23; D.E. 20-4 at ¶ 8.). In September 2022, Laughlin was offered the option to work from home three days a week with varying hours. (D.E. 20-7 at 6-24).

**Finance Division Complains About Laughlin Improperly Withholding Receipts**

On December 20, 2022, Valledor received a complaint from the ASD Finance Division because Laughlin improperly withheld event receipts. (D.E. 20-6). Laughlin's improper withholding of event receipts caused the ASD Finance Division to be out of compliance with payment card industry (PCI) standards and tardy in completing the reconciliation process and submitting documentation/information to the County's Central Finance Department. (*Id.*). The December 20, 2022 email from ASD Finance highlights Laughlin's shortcomings:

> This past week, on Thursday, 12/15/22, we had an issue
> with missing event receipts from 12/3/22. These receipts

were processed through a portable pos machine on 12/3/22; however, the batch was not closed out until 12/9/22. Finance staff had no idea this event was taking place because Event staff did not communicate this to us, as previously discussed. Furthermore, we had to research the possibilities of these missing receipts. With Jerry's assistance, we tracked down that this was from the Paws at the Underline event on 12/3/22. The original credit card receipts, along with their corresponding Chameleon receipts/vaccination packets, were sitting on Emily's [Laughlin's] desk and were not found until 12/15/22. **This means that they had been in Emily's [Laughlin's] possession for 12 days at that point. Finance was not aware of any critical information required about this event or it's payments until we were researching missing items. It took Finance staff and Jerry over three days to obtain all critical details and documents for this event. As such, our Finance unit was extremely tardy in completing the reconciliation process and submitting documentation/information to the County's Central Finance Department for this date.**

(*Id*.) (emphasis added).

**Laughlin's Poor Performance and Lack of Communication**

As Laughlin's direct supervisor, Valledor received multiple complaints regarding Laughlin's lack of communication. (D.E. 20-5 at 54:8-55:12; *Id*. at 68:2-25). Additionally, in December 2022, Valledor received a complaint regarding Laughlin's inappropriate workplace behavior. (*Id*. at 52:9-25; *Id*. at 56:6-57:23).

On December 21, 2022, Valledor met with Laughlin to discuss Laughlin's performance issues. (D.E.20-11; D.E. 20-5 at 52:9-54:1). On December 22, 2022, Valledor sent Laughlin an email summarizing their meeting, which included several

bullet points underscoring her poor performance:

- Please work on your communication with other staff. The lack of communication has resulted in high stress levels among staff with things being done last minute, unexpectedly…. This will diminish errors like the one that occurred at the Bean automotive event on December 10th, where the MAC was still in the shop, and we had to utilize the WOW for the event last minute.

  \* \* \*

- Respect and professionalism at the work are of the utmost importance here at ASD. I want to stress the importance of always being respectful and professional at work. This is especially true when communicating via text with your coworkers, other staff, and me. **The Text exchange regarding the foster/volunteer table for the Save Charlie event that occurred between you and I last week, was unacceptable. Everyone deserves to be respected in the workplace and if you have a specific conflict with someone, my door is always open to help resolve it.**

  \* \* \*

- … This past Saturday, December 18th, several employees and volunteers witnessed you lying on the floor in the foster office. **I'd like to reiterate that you cannot lie down on the floor of any office within the shelter. Again, I cannot stress enough the importance of being professional in the workplace.** This is considered extremely inappropriate and unprofessional behavior. Please do not let it occur again.

(D.E. 20-11)(emphasis added).

Valledor had multiple counseling conversations with Laughlin throughout the two months of supervising Laughlin. (D.E. 20-5 at 76:10-21). According to Valledor, the ASD outreach events coordinated by Laughlin were not as successful as they could have been had they been properly planned. (D.E.20-5 at 78:19-79:1).

**Ms. Valledor Recommends that Laughlin Fail Probation**

On December 30, 2022, Valledor emailed Human Resources Manager, Ms. Sanchez, and Ms. Sanchez's direct supervisor, Ms. Jose, to inform them that she recommended the failure of Laughlin's probation. (D.E. 20-12). Valledor's recommendation to fail Ms. Laughlin's probation was based solely on Ms. Laughlin's performance issues. (D.E. 20-13 at ¶ 16). Ms. Laughlin's medical condition did not factor in Valledor's recommendation. (*Id.*).

**Director Stanford Fails Laughlin's Probation for Poor Performance**

On January 5, 2023, Director Stanford failed Laughlin's probation as an ASD Animal Outreach Specialist. (D.E. 20-2 at p. 135; D.E. 20-14 at ¶ 6; D.E. 20-5 at 90:19-25; D.E. 20-3 at 50:22-25). Director Stanford's decision to fail Laughlin's probation was based solely on Laughlin's performance issues. (D.E. 20-14 at ¶ 7). Laughlin's medical condition did not factor in Laughlin's failure of probation. (*Id.*).

**Laughlin's Voluntary Resignation**

On January 5, 2023, Laughlin voluntarily resigned. (D.E. 20-15 at p. 1; D.E. 20-4 at ¶10). That same day, Ms. Sanchez sent Laughlin an email confirming ASD's acceptance of Laughlin's resignation:

> This email confirms that you verbally resigned your employment on January 5th, 2023. Consistent with Miami-Dade County policy, we accept your resignation with a final date of employment of Friday, January 6, 2023.

(D.E. 20-15 at p. 1). On January 6, 2023, Laughlin emailed Ms. Sanchez attempting to withdraw her verbal resignation. (D.E. 20-15 at p. 2).

(iii)     Standard of Review

The standard of review for this appeal is *de novo. McKinley v. Kaplan*, 262 F.3d 1146, 1149 (11th Cir. 2001). The Court may also affirm for any reason supported by the record, even if not relied upon by the district court." *United States v. Hall*, 714 F.3d 1270, 1271 (11th Cir. 2013).

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

## SUMMARY OF ARGUMENT

Appellant Emily Laughlin was a probationary employee that exhibited such poor performance during the probationary period that even other divisions of the Animal Services Department complained regarding Laughlin. When Laughlin was notified that she failed her probationary period, Laughlin voluntarily resigned. The County accepted Laughlin's resignation. And because Laughlin did in fact resign her employment, she did not suffer an adverse employment action and has no viable claims.

Despite Laughlin's confusing attempt to criticize Judge Moore's well-reasoned Order, the district court followed appropriate summary judgment standards and applied correct legal principles to only undisputed material facts. The district court decided it need not settle the argument regarding Laughlin's voluntary resignation. Nonetheless, the district court correctly found that Laughlin did not meet her burden of proving a case of disability discrimination whether through direct evidence, circumstantial evidence under the *McDonnell Douglas* burden-shifting paradigm, or any convincing mosaic of proof. The district court also correctly found that Laughlin did not show that the County's proffered legitimate, nondiscriminatory reasons for failing her probation were a pretext for unlawful discrimination. There are no valid grounds for remand. Thus, the district court's Order should be affirmed.

**ARGUMENT**

**I.      The District Court Correctly Found that Laughlin Failed to Prove a Prima Face Case of Disability Discrimination Under Any Theory**

To survive summary judgment, a plaintiff must present facts sufficient to permit a jury to find there was intentional discrimination. *Lewis v. City of Union City, Ga*, 918 F.3d 1213, 1220 (11th Cir. 2019) (en banc). A plaintiff can do this by (1) "present[ing] direct evidence of discriminatory intent," (2) "satisfying the burden-shifting framework set out in *McDonnell Douglas*," or (3) "demonstrat[ing] a 'convincing mosaic' of circumstantial evidence that warrants an inference of intentional discrimination." *Id*. at 1220 & n.6.

**II.     The District Court Correctly Found No Direct Evidence of Disability Discrimination**

A.      <u>Ms. Jose's Statements Do Not Amount To Direct Evidence</u>

It is well settled in this Circuit that direct evidence is evidence that, "if believed, proves the existence of a fact without inference or presumption." *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1215 (11th Cir. 2021) (internal quotation marks and citation omitted). This is a "rigorous standard." *Damon v. Fleming Supermarkets of Fla*., Inc., 196 F.3d 1354, 1359 (11th Cir. 1999). "Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Todd* 998 F.3d at 1215. By contrast, "evidence that merely suggests, but does not

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

prove, a discriminatory motive is not direct evidence." *Id.* (internal quotation marks and citation omitted).

The district court did not err in finding that the comments Laughlin attributes to Ms. Jose, even if accepted for summary judgment purposes as undisputed, do not amount to evidence of direct discrimination. (D.E. 44, p. 8). Laughlin disagrees and, through illogical leaps and bounds, attempts to mislead the Court with case law that is entirely extraneous to this matter. For example, Laughlin's reliance on *Merrit v. Dillard Paper Co.,* 120 F.3d 1181, 1190-91 (11th Cir. 1997) – a retaliation case – is misplaced. Laughlin uses *Merritt* to argue that "the critical question [to determine whether evidence is direct or circumstantial] is the casual link between the adverse employment decision and the protected class in the complained of statement(s)." (br. at 12). That is incorrect. In *Merritt*, the plaintiff offered evidence that he was fired after his employer said, "your deposition was the most damning to Dillard's case, and you no longer have a place here at Dillard Paper Company." *Id.* at 1190. The court (in its retaliation analysis) relied extensively on the coupling of the clause terminating the plaintiff with the clause indicating the plaintiff's participation in a protected activity. *Id.* Unquestionably, however, *Merrit* provides the same definition of direct evidence*: "*evidence, which if believed, proves existence of fact in issue without inference or presumption." *Id.* at 1180 *(quoting Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1528 n. 6 (11th Cir.1987) (quotation marks omitted).

In her brief, Laughlin effectively concedes that the factfinder is required to infer that Ms. Jose's statements arose out of discriminatory animus when she argues that "Laughlin plainly ***understood*** Jose's statements to mean that she was being fired because of her disabled status." [br. at 12]. Again, Laughlin's own words doom her argument that an inference is not required. Qualifying the argument by stating what Laughlin "understood" is just the type of interpretive inference that renders a statement as not being direct evidence.

Courts in this Circuit routinely refuse to "give great weight . . . to language that is, at best, only circumstantial evidence" of discrimination, because doing so "blurs the important distinction between circumstantial evidence and direct evidence for *prima facie* cases." *Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1323 n.11 (11th Cir. 1998); *see also Dowdell-McElhaney v. Glob. Payments Inc.*, No. 23-10334, 2024 WL 2796976, at *5 (11th Cir. May 31, 2024) ("Although Dowdell-McElhaney argues on appeal that there is direct evidence of discrimination, she has not pointed to any 'blatant remark' made by TSYS 'whose intent could mean nothing other than' that its decision to not assign her to the First Party Fraud Team was based on her age." (quoting *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 922 (11th Cir. 2018))). In fact, "faced with far more damning evidence, the Eleventh Circuit has repeatedly cast aside claims of direct discrimination." *Harrell v. City of Opa-Locka*, No. 20-21927-CIV, 2022 WL 898565, at *16 (S.D. Fla. Mar. 28, 2022) (collecting

cases); *see Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296 (11th Cir. 2023)(holding supervisor's purported statement that "blacks are lazy, and don't like to work" did not constitute direct evidence of race discrimination); *see also Walker v. St. Joseph's/Candler Health Sys., Inc.*, 506 F. App'x 886, 888 n.1 (11th Cir. 2013) (finding no direct evidence of discrimination where decisionmaker told plaintiff she "should go back to the night shift" to "be with her own kind" because "the 'your own kind' statement does not prove race or gender discrimination without inference").

### B. Ms. Jose Was Not the Decisionmaker

Furthermore, the district court correctly concluded that even if discriminatory animus could be imputed to Ms. Jose based on the alleged statements, Laughlin's direct evidence argument fails because Ms. Jose was not the decisionmaker. A decisionmaker is "the one who ultimately fired, demoted, or punished the plaintiff." *Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296 (11th Cir. 2023). Here, the record demonstrates that it was Director Stanford, not Ms. Jose, who ultimately signed and authorized Laughlin's failed probation. (D.E. 20-2 at p. 135; D.E. 20-14 at ¶ 6; D.E. 20-5 at 90:19-25; D.E. 20-3 at 50:22-25). In fact, the record shows that the ASD Director was the only individual with the authority to do so. (*Id.*; D.E. 20-9 at 9:8-11).

On the other hand, as Assistant Director of Administrative Services, Ms. Jose

oversaw the Human Resources Department. (D.E. 20-3 at 50:13-18). Because of this, Laughlin's direct supervisor, Valledor, emailed Ms. Jose and the Human Resources Manager with her recommendation to fail Laughlin's probation. (D.E. 20-12). Valledor listed, among other reasons, Laughlin's failure to effectively and efficiently perform her job duties. (*Id.*). To support her recommendation, Valledor attached an email that she sent to Laughlin with detailed instances of Laughlin's failure to meet ASD's standards. (*Id.*; D.E. 20-11). Ms. Jose then, as part of her role in Human Resources, presented the failure of probation letter to Director Stanford for her ultimate approval and signature. (D.E. 20-3 at 50:22-51:10). To this point, Director Stanford testified:

> Q. (Mr. Prater): Did you ask why Ms. Laughlin was being failed from her probation?
>
> A. (Director Stanford): I don't recall any specifics about it, but I will tell you **it was my habit when those were brought to me, or termination letters, to ask a series of questions**. **I wouldn't just sign something.**

(D.E. 20-10 at 22:15-20) (emphasis added).

Plaintiff cites to *Harris.* But like in *Harris*, the undisputed evidence shows that Director Stanford conducted her own investigation and relied on the recommendation of Valledor when she signed and authorized Laughlin's failure of probation. It is also undisputed that Ms. Jose was only present in the failure of probation meeting because she oversaw the Human Resources Department. [D.E. 20-3 at 50:13-18; D.E. 20, ¶ 34; D.E. 28, ¶ 34). This does not make her the decision-

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

maker. Thus, any animus directly imputed to Ms. Jose cannot transfer to Director Stanford without an inferential leap that Ms. Jose's animus affected Director Stanford's decision. And there is no evidence of a basis for such an inferential leap. *See Bass v. Lockheed Martin Corp.*, 287 F. App'x 808, 811 (11th Cir. 2008) (finding comments of the plaintiff's supervisor inadequate to establish direct evidence of ADA discrimination where supervisor was not decision maker).

As the Eleventh Circuit has explained, "remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296, 1301 (11th Cir. 2023) (quoting *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998)). Accordingly, because Laughlin simply presumed that Jose's statements meant she was failed for something other than her indisputable poor performance, there is no direct evidence and Laughlin must proceed through a showing of circumstantial evidence – which the district court correctly found also fails.

**III. The District Court Properly Found That Plaintiff's Circumstantial Evidence Does Not Prove A Claim of Disability Discrimination Under the McDonnell-Douglas Standard**

To establish a *prima facie* case under the ADA, a plaintiff must show that she suffered an adverse employment action, and at the time of the adverse action, she: (1) had a disability, (2) was a qualified individual, and (3) was subjected to unlawful

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

discrimination because of her disability. *Barneman v. Int'l Longshoreman Ass'n Loc. 1423*, 840 F. App'x 468, 478–79 (11th Cir. 2021).

A.  Laughlin Has Not Establish That She Suffered An Adverse Employment Action

The County offers a basis for affirmance that was not resolved by the district court – Laughlin's voluntary resignation. The district court chose not to rule on the matter because the court held that the County was entitled to summary judgment for other reasons, as argued herein. *See* D.E. 44, pp. 6-7.  However, as a threshold matter, an employee who voluntarily resigns cannot claim that she suffered an adverse employment action. *Harrison v. Sheriff, Holmes Cnty. Fla.*, No. 22-14288, 2024 WL 449374, at *4 (11th Cir. Feb. 6, 2024).

Here, the undisputed record evidence shows that Laughlin resigned on January 5, 2023. (D.E. 20-15, p. 1; D.E. 20-4 at ¶ 10].  Laughlin's attempt to withdraw her resignation the following day after her resignation had been accepted proves that she in fact resigned.  Moreover, Laughlin has not come forward with sufficient evidence to establish that the resignation was involuntarily extracted. *Hargray v. City of Hallandale,* 57 F.3d 1560, 1567 (11th Cir. 1995).  Therefore, because Laughlin's resignation was voluntary – even though triggered by the County's actions – Laughlin cannot show that she suffered an adverse employment action and cannot prevail on her claims. *Id.*  Thus, this Court could affirm the summary judgment on this basis as well.

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

B.    <u>Laughlin Has Not Established That She Was Disabled or Perceived as Disabled at the Time of Her Failed Probation</u>

The District Court did not err in determining that Laughlin has not proven that she was disabled or perceived as disabled within the meaning of the statute. "In order for any ADA claim to succeed, the claimant must show that her condition of impairment rises to the level of a disability." *Carruthers v. BSA Advert., Inc.*, 357 F.3d 1213, 1215–16 (11th Cir. 2004). To determine whether a plaintiff had a qualifying disability, courts apply a three-step analysis: (1) consider whether the alleged disability was a mental or physical impairment; (2) identify the life activity upon which the plaintiff relies and determine whether it constitutes a major life activity; and (3) determine whether the impairment substantially limited the major life activity. *Hudson v. Tyson Farms, Inc.*, 769 F. App'x 911, 915 (11th Cir. 2019) (citing *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998)).

Major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). The ADA also defines major life activities to include "functions of the immune system" and "neurological, brain, . . . [and] endocrine . . . functions." *Id.* § 12102(2)(B).

    1.   *The Medical Record Submitted by Laughlin Fails to Establish That She Cannot Perform A Major Life Activity*

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

Here, Laughlin claims that she suffered from periodic dizzy spells, headaches, ear ringing, and episodes of vomiting throughout the workday. *See* D.E. 20-1 at 42–43, 47; *see also* D.E. 1 at ¶ 21. Inexplicably, Laughlin has not submitted a note from a medical doctor describing Laughlin's maladies or medical limitations, if any. A review of the record shows that the ***only*** record in evidence regarding Laughlin's issues is a note provided by Laughlin to Defendant's Human Resources Manager dated October 5, 2022, wherein Advanced Practice Registered Nurse Jessica Roldan stated that Laughlin had ***undefined*** "complex medical issues" and recommended a leave of absence from October 5, 2022 to November 5, 2022. (D.E. 20-8). *See Holton v. First Coast Serv. Options, Inc.*, 703 F. App'x 917, 921 (11th Cir. 2017) (finding that plaintiff failed to establish she was disabled under the ADA when "[t]he only evidence she offered of her disability was a two-sentence letter from her chiropractor, which did not provide enough information to establish that she was disabled").

What is more, Laughlin testified that she turned down a subsequent job offer in January 2023, because her "medical condition was still in the ***unknown***." [D.E. 20-2 at 28:14-29-6; D.E. 28 at ¶ 52](emphasis added). Shockingly, Laughlin now asks this Court to diagnose her ***unknown*** condition in order to conclude that she did

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

in fact qualify as a disabled individual at the time of her failed probation.[2,3]

Even if Laughlin has sufficiently demonstrated that her ailments constituted mental or physical impairment, the record does not include evidence that any of Laughlin's medical issues substantially limited her in a *major life activity* as compared to most people in the general population. *See Munoz v. Selig Enterprises, Inc.*, 981 F.3d 1265, 1272 (11th Cir. 2020)(quoting 29 C.F.R. § 1630.2(j)(1)(ii)). The irrefutable testimony from Laughlin is that despite her diagnosis, she was able to perform her job duties and that there was no part of her job that she could not do. (D.E. 20-1 at 79:1-11). Her deposition testimony on this issue is worth repeating:

> Q. (Ms. de Ona):　　　Were you having any difficulty performing?
> A. (Ms. Laughlin):　　Not that I saw within myself, no.
> Q. (Ms. de Ona):　　　**Was there any part of your job you couldn't do?**
> A. (Ms. Laughlin):　　 **No.**

(D.E. 20-1 at 79:7-11).

Additionally, even though she claims that her symptoms are still on-going through the date of her deposition on March 11, 2024 (D.E. 20-1 at 47), Laughlin engages in snorkeling, camping, traveling, frequent hikes and attends classes for her master's degree. (D.E. 20 at ¶¶ 48-50; D.E. 28 at ¶¶ 48-50). Laughlin currently holds

---

[2] As late as Laughlin's deposition taken on March 11, 2024, Laughlin testified that it is still unknown whether her tumor is benign or cancerous. [D.E. 20-1 at 43:21 – 44:8].

[3] As late as Laughlin's deposition taken on March 11, 2024, Laughlin testified that the nodules on the outer side of her thyroid are benign, and it is still unknown whether the nodules in her inner thyroid are benign or cancerous. [*Id.* at 45:1-8].

a full-time position at a Veterinary Hospital. (D.E. 28 at ¶ 53). *See Cash v. Smith*, 231 F.3d 1301, 1306 (11th Cir. 2000) (affirming grant of summary judgment to employer on ADA claim because employee had not "shown that she was substantially limited in any major life activity at the time of the employment actions complained of"); *see also Munoz*, 981 F.3d at 1273 (holding District Court correctly granted summary judgment on ADA claims where the record included evidence that plaintiff's health was impaired, but the record lacked evidence regarding the frequency, severity, and duration of the plaintiff's alleged limitation).

As cogently stated by the District Court, "'Plaintiff's conclusory and barebones allegations that her brain tumor and related ailments 'involved a number of' major life activities, without specifying any such activities or offering evidence to support such a finding, is insufficient at the summary judgment stage.'" *Laughlin v. Miami-Dade Cnty., Fla*., No. 1:23-CV-23350-KMM, 2024 WL 4377983, at *6 (S.D. Fla. Sept. 9, 2024). Accordingly, the district court's Order should be affirmed.

The record also irrefutably demonstrates that Laughlin was not perceived as disabled by the County at the time of her failed probation. Under the ADA, a person is "regarded as disabled if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities." *Cox v. City of Tampa*, 418 F. App'x 845, 846 (11th Cir. 2011)(quoting *Murphy v. United Parcel Serv., Inc.,* 527 U.S. 516, 521–22, 119 S.Ct. 2133, 2137,

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

144 L.Ed.2d 484 (1999). Here, the only discussions Laughlin had with Human Resources related to her medical issues were limited to her flexible work schedule and time needed to attend doctors' appointments to find out what was going on. (D.E. 20-7 at 2:18-4:20; D.E. 20-3 at 20:24-22:1). And, as previously stated, the **_only_** medical note provided to the County was a note which stated that Laughlin had undefined "complex medical issues." (D.E. 20-8). Moreover, when Laughlin discussed her work from home schedule with Valledor, Laughlin assured Valledor that she could perform her job duties from home. (D.E. 20-5 at 43:6-8). Thus, the district court should be affirmed.

> C.    Laughlin Has Not Establish that She Was Subjected to Unlawful Discrimination Because of Her Disability

This Circuit recently held that the ADA imposes a "but-for" causation standard—that is, an adverse employment action would not have occurred but for the plaintiff's disability. *See Akridge v. Alfa Ins. Companies*, 93 F.4th 1181, 1192 (11th Cir. 2024).

In this case, there is no evidence of any alleged comparators. The ADA's text "require[s] a plaintiff alleging disparate treatment to prove that [s]he was treated less favorably than a similarly situated, non-disabled person." *Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale*, 46 F.4th 1268, 1275-76, 1278 (11th Cir. 2022) (concluding the phrase "discriminate against," as used in several federal anti-

discrimination laws including the ADA and the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(f), refers to differences in treatment that injure protected individuals).

Moreover, there is zero evidence suggesting Director Stanford (the decision-maker) had any motive to discriminate against Laughlin based on her alleged disability. *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999 (courts do not determine whether employment decisions are prudent or fair, and instead determine whether unlawful discriminatory animus motivates a challenged employment decision.). Laughlin's reliance on mere speculation, rather than any actual evidence of discriminatory intent, dooms her claims and warrants the Court to affirm.

      D.    <u>The County Had Legitimate, Non-discriminatory Reasons for Laughlin's Failed Probation</u>

This Circuit has made clear that "an employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1338 (11th Cir. 2022) (quotation marks omitted). In this case, the County cited multiple records that detail multiple instances of Laughlin's poor performance throughout her probationary period. (D.E. 20-6; D.E. 20-5 at 54:8-55:12, *Id.* at 68:2-25; *Id.* at 52:9-25; *Id.* at 56:6-57:23). After all, as a new employee, Laughlin was subject to a one-year probationary period. (D.E. 20-4 at ¶¶ 5-6). During this time, the decision to terminate her employment was

entirely within ASD's discretion. *See Hawkshead v. Cnty. of Sarasota*, 738 F. Supp. 470, 473 (M.D. Fla. 1990)(holding the decision to terminate an employee during the probationary period is entirely within the employer's discretion).

### 1. Laughlin's Poor Performance

During her probation, Laughlin was counseled multiple times by her direct supervisor, Valledor, regarding her lack of communication and poor performance. (D.E. 20-5 at 76:10-21). Additionally, Valledor received multiple complaints regarding Laughlin's lack of communication. (D.E. 20-5 at 54:8-55:12, *Id.* at 68:2-25). In December 2022, Valledor received a complaint regarding inappropriate workplace behavior by Laughlin. (D.E. 20-5 at 52:9-25; *Id.* at 56:6-57:23).

Importantly, on December 20, 2022, Valledor received the following email from the Finance Division:

> This past week, on Thursday, 12/15/22, we had an issue with missing event receipts from 12/3/22. These receipts were processed through a portable pos machine on 12/3/22; however, the batch was not closed out until 12/9/22. Finance staff had no idea this event was taking place because Event staff did not communicate this to us, as previously discussed. Furthermore, we had to research the possibilities of these missing receipts. With Jerry's assistance, we tracked down that this was from the Paws at the Underline event on 12/3/22. The original credit card receipts, along with their corresponding Chameleon receipts/vaccination packets, were sitting on Emily's [Appellant's] desk and were not found until 12/15/22. **This means that they had been in Emily's [Appellant's] possession for 12 days at that point. Finance was not aware of any critical information required about this**

> **event or it's payments until we were researching missing items. It took Finance staff and Jerry over three days to obtain all critical details and documents for this event. As such, our Finance unit was extremely tardy in completing the reconciliation process and submitting documentation/information to the County's Central Finance Department for this date.**

[D.E. 20-16] (emphasis added).

Laughlin does not point to any record evidence establishing that Valledor did not actually believe the Finance Division's detailed recital of Laughlin's poor performance. The next day (December 21, 2022), Valledor held a meeting with Laughlin to discuss her performance issues. (D.E. 20-11). On December 22, 2022, Valledor sent Laughlin an email that summarized their meeting, which included several bullet points highlighting her poor performance:

- Please work on your communication with other staff. The lack of communication has resulted in high stress levels among staff with things being done last minute, unexpectedly…. **This will diminish errors like the one that occurred at the Bean automotive event on December 10th, where the MAC was still in the shop, and we had to utilize the WOW for the event last minute.**

\* \* \*

- Respect and professionalism at the work are of the utmost importance here at ASD. I want to stress the importance of always being respectful and professional at work. This is especially true when communicating via text with your coworkers, other staff, and me. **The Text exchange regarding the foster/volunteer table for the Save Charlie event that occurred between you and I last week, was unacceptable. Everyone deserves to be respected in the workplace and if you have a specific conflict with someone, my door is always open to help resolve it.**

* * *

- … **This past Saturday, December 18th, several employees and volunteers witnessed you lying on the floor in the foster office**. I'd like to reiterate that you cannot lie down on the floor of any office within the shelter. Again, I cannot stress enough the importance of being professional in the workplace. This is considered extremely inappropriate and unprofessional behavior. Please do not let it occur again.

(*Id.*) (emphasis added).

It is undisputed that Laughlin was subject to a one-year probationary period (D.E. 20 at ¶ 2; D.E. 28 at ¶ 2), and the undisputed email from the Finance Department was, on its own, a legitimate reason to fail Laughlin's probation.[4] (D.E. 20-5 at 53:23-54:1). Moreover, it is undisputed that Valledor outlined additional issues with Laughlin's performance in her December 22nd email. (D.E. 20-11). Therefore, the County established legitimate, non-discriminatory reasons for Laughlin's failed probation.

## IV. The District Court Correctly Concluded that Laughlin Failed to Prove Disability Discrimination Through Any Convincing Mosaic of Circumstantial Evidence.

"A convincing mosaic may be shown by evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements . . ., and other bits and pieces from which an inference of discriminatory intent might be drawn, (2)

---

[4] An employee on probation is subject to dismissal or demotion without a right of appeal. *Ramirez v. Miami-Dade Cnty.*, 846 F. Supp. 2d 1308, 1311 (S.D. Fla. 2012), *aff'd*, 509 F. App'x 896 (11th Cir. 2013) (D.J. Moore).

27

systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual*." Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019).

As noted above, Laughlin cannot establish either better treatment of similarly situated employees or any pretext in the County's justification for her failed probation. Nor can she establish any of the suspicious timing, ambiguous statements or "other bits and pieces" from which discriminatory intent may be inferred. Laughlin attempts to create a convincing mosaic by pointing to multiple instances where, in her opinion, she was treated differently for working from home. It is undisputed that ASD did not receive any complaints from employees related to Ms. Laughlin working from home. (D.E. 20-5 at 90:6-8; D.E. 20-10 at 17:25- 18:3; D.E. 20-7 at 22:1-8; D.E. 20-3 at 42:1-4). Valledor also testified that Laughlin's work from home did not impact her ability to do her duties and responsibilities:

> Q. Did Ms. Laughlin working from home create issues with her -- between her and other staff?
> A. No.
> Q. Did it impact her ability to do her duties and responsibilities?
> A. No.
> Q. Would you have preferred that she was working in the office?
> [...]
> A. No, I was okay with her working from home.

(D.E. 20-5 at 100:8-17).

In her attempt to establish a convincing mosaic, Laughlin offers argument that

there was no prior documentation with her performance. To this point, Valledor testified:

> Q. (Mr. Prater): Was Ms. Laughlin ever written up or did she ever receive any sort of formal counseling or disciplinary action?
>
> A. (Ms. Valledor): From myself, no. I don't know about her prior supervisor. And to explain that a little bit better, I don't know if this is a policy, **but common practice within the County is a probationary employee does not receive an ROC [Record of Counseling] or a DAR [Disciplinary Action Report] because if they do something to receive that it is a failure of probation.** So she wouldn't have been eligible for one anyway, it would have just been a failure of probation.

(D.E. 20-5 at 66:10-21) (emphasis added).

Laughlin also argues that Valledor had "no recollections of specific performance or staffing issues." (br. at 26). However, Valledor detailed multiple issues with Laughlin's performance throughout her deposition. (D.E. 20-5 at 53:4-14; *Id.* at 84:7-11). In truth, Laughlin did not meet ASD's standards, and her status as a probationary employee made the decision to fail her probation for poor performance the type of decision that makes sense to a government employer seeking to serve the public. Unfortunately, the ASD events coordinated by Laughlin were not as successful as they could have been had they been properly planned. To this point, Ms. Valledor testified:

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

> A. (Ms. Valledor): I wouldn't -- I wouldn't call them failures, it was just there weren't -- there was always kinks with it, it was scheduling issues. Yes, the events would go on, but they weren't as successful as it could have been if it had proper planning.
>
> Q. (Mr. Prater): And that was her fault?
>
> A. (Ms. Valledor): Yes.

(D.E. 20-5 at 78:19-79:1)

Upon careful review, all of Laughlin's contentions are clearly false and fail to sustain her claims of discrimination. The district court's Order should be affirmed.

## V. The District Court's Order Should be Affirmed as the Legitimate, Non-discriminatory Reasons Asserted by the County Cannot Be Established As Pretextual

Even if this Court held a *prima facie* case was established (which the County vehemently disputes), Laughlin's discrimination claim fails because the County articulated legitimate, non-discriminatory reasons for her failed probation. An employee cannot rebut a reason "by simply quarreling with the wisdom of" it. *Patterson v. Ga. Pac.*, LLC, 38 F.4th 1336, 1352 (11th Cir. 2022) (citation and internal quotation marks omitted). Instead, she must point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the justification. *Id.* (citation omitted).

As a result, the pretext inquiry "centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Todd*, 998 F.3d at 1219. Further, "if the employer acted on

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

its honestly-held belief . . . there is no discrimination." *East v. Clayton Cnty, GA*, 436 Fed. App'x 904, 912 (11th Cir. 2011).

Here, Laughlin is unable to point to any conflicting record evidence or any other indicia of pretext as the reason for her failed probation. She has also failed to adduce evidence that Director Stanford, the ultimate decision maker, based her decision to fail Laughlin's probation for any discriminatory reason. In the absence of any evidence showing pretext, Laughlin's speculation about a possible discriminatory motive, or her own opinion, does not call into question the County's legitimate, non-retaliatory reason. *See Howard v. Oregon Television, Inc.*, 276 F. App'x 940, 941 (11th Cir. 2008) ("[S]peculation does not create a genuine issue of fact."); *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 444 (11th Cir. 1996) ("Conclusory allegations, without more, are insufficient to raise an inference of pretext."); *see also Todd*, 998 F.3d at 1219 (upholding summary judgment where plaintiff failed to present sufficient evidence to create a genuine dispute of material fact as to whether the defendant's proffered reasons for terminating her employment were pretextual). Accordingly, the district court's well-reasoned Order should be affirmed.

## VI. Conclusion

Appellant Emily Laughlin's poor performance was identified in detail by the Animal Service Finance Department and her immediate supervisor, Valledor. That

is why she was terminated by Director Sandford during the probationary period. Laughlin now claims that the County failed her probation because of alleged unknown medical issues even though there is no record evidence that she suffers from a disability under the ADA. Indeed, Laughlin has not even submitted a doctor's note indicating that she is unable to perform her duties because of a substantial limitation.  What is more, Laughlin testified that she was able to perform all her job duties and goes on hiking trips and is physically active. For all the foregoing reasons, the County respectfully requests that this Court affirm the district court's decision granting summary judgment in favor of the County on all counts.

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5), the type style requirements of FED. R. APP. P. 32(a)(6), and the type-volume limitation of FED. R. APP. P. 32(a)(7)(A) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 14-point Times New Roman for text and 14-point Times New Roman for headings, and it contains 7052 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 18, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ *Andrea Sofia de Oña*
Andrea Sofia de Oña
Assistant County Attorney

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151